No. 21-2070

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DISABILITY RIGHTS SOUTH CAROLINA; ABLE SOUTH CAROLINA; AMANDA MCDOUGALD SCOTT, individually and on behalf of P.S., a minor; MICHELLE FINNEY, individually and on behalf of M.F., a minor; LYUDMYLA TSYKALOVA, individually and on behalf of M.A., a minor; EMILY POETZ, individually and on behalf of L.P., a minor; SAMANTHA BOEVERS, individually and on behalf of P.B., a minor; TIMICIA GRANT, individually and on behalf of E.G., a minor; CHRISTINE COPELAND, individually and on behalf of L.C., a minor; HEATHER PRICE, individually and on behalf of H.P., a minor; CATHY LITTLETON, individually and on behalf of Q.L., a minor,
*Plaintiffs-Appellees*,

v.

HENRY DARGAN MCMASTER, in his official capacity as Governor of South Carolina; ALAN WILSON, in his official capacity as Attorney General of South Carolina,
*Defendants-Appellants*,

and

MOLLY SPEARMAN, in her official capacity as State Superintendent of Education; GREENVILLE COUNTY SCHOOL DISTRICT; HORRY COUNTY SCHOOL DISTRICT; LEXINGTON COUNTY SCHOOL DISTRICT ONE; OCONEE COUNTY SCHOOL DISTRICT; DORCHESTER COUNTY SCHOOL DISTRICT TWO; CHARLESTON COUNTY SCHOOL DISTRICT; PICKENS COUNTY SCHOOL DISTRICT,
*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**RESPONSE IN OPPOSITION TO RENEWED EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL AND FOR ADMINISTRATIVE STAY**

(counsel listed on following page)

David Allen Chaney Jr.
AMERICAN CIVIL LIBERTIES
  UNION OF SOUTH CAROLINA
P.O. Box 20998
Charleston, SC 29413
achaney@aclusc.org

Adam Protheroe
SOUTH CAROLINA
  APPLESEED LEGAL
  JUSTICE CENTER
P.O. Box 7187
Columbia, SC 29202
adam@scjustice.org

B. Randall Dong
Anna Maria Conner
Amanda C. Hess
DISABILITY RIGHTS
  SOUTH CAROLINA
3710 Landmark Dr., Suite 208
Columbia, SC 29204

Rita Bolt Barker
WYCHE, P.A.
200 East Camperdown Way
Greenville, SC 29601
rbarker@wyche.com

John A. Freedman
Elisabeth S. Theodore
Anthony J. Franze
Tara Williamson
ARNOLD & PORTER KAYE
  SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
john.freedman@arnoldporter.com
elisabeth.theodore@arnoldporter.com
tara.williamson@arnoldporter.com

Louise Melling
Jennessa Calvo Friedman
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad St.
New York, NY 10004
lmelling@aclu.org
jcalvo-friedman@aclu.org

Susan Mizner
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
smizner@aclu.org

*Counsel for Appellees Disability Rights South Carolina; Able South Carolina; Amanda McDougald Scott, individually and on behalf of P.S., a minor; Michelle Finney, individually and on behalf of M.F., a minor; Lyudmyla Tsykalova, individually and on behalf of M.A., a minor; Emily Poetz, individually and on behalf of L.P., a minor; Samantha Boevers, individually and on behalf of P.B., a minor; Timicia Grant, individually and on behalf of E.G., a minor; Christine Copeland, individually and on behalf of L.C., a minor; Heather Price, individually and on behalf of H.P., a minor; Cathy Littleton, individually and on behalf of Q.L., a minor*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES .............................................................ii

INTRODUCTION .........................................................................1

STANDARD OF REVIEW.................................................................2

ARGUMENT ..............................................................................3

I.    Defendants Have Not Made a Strong Showing They Will Succeed On the Merits ...................................................3

    A.    The district court did not abuse its discretion in concluding there is a private right of action to bring a reasonable modification claim .................................3

    B.    The district court's order is not a federal mask mandate and is reasonable....................................................11

    C.    Plaintiffs have standing.....................................14

        1.    Plaintiffs have an "injury in fact" ...............15

        2.    Plaintiffs' injury is traceable to Proviso 1.108............18

        3.    Plaintiffs injuries are likely to be redressed...............19

II.    Defendants Have Not Shown They Will Be Irreparably Injured Absent a Stay....................................................20

III.    Issuance of a Stay Will Substantially Injure Plaintiffs.................21

IV.    The Public Interest Supports Denial of the Stay...........................25

CONCLUSION ............................................................................27

CERTIFICATE OF SERVICE................................................................29

CERTIFICATE OF COMPLIANCE ........................................................30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A Helping Hand, LLC v. Baltimore Cty., MD,*
515 F.3d 356 (4th Cir. 2008)..................................................................5

*Alexander v. Choate,*
469 U.S. 287 (1985) ...........................................................5, 7, 9, 10

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ...........................................................................9

*Arc of Iowa v. Reynolds,*
No. 4:21-cv-00264, 2021 WL 4166728 (S.D. Iowa
Sept. 13, 2021) ...................................................................................2

*Arc of Iowa v. Reynolds,*
No. 4:21-cv-00264, 2021 WL 4737902 (S.D. Iowa
Oct. 8, 2021) ..............................................................................2, 15

*Bacon v. City of Richmond, Virginia,*
475 F.3d 633 (4th Cir. 2007)................................................................6

*Banks v. Booth,*
459 F.Supp.3d 143 (D.D.C. 2020) ......................................................25

*Barnes v. Gorman,*
536 U.S. 181 (2002) .......................................................................5, 10

*Bostic v. Schaefer,*
760 F.3d 352 (4th Cir. 2014)..............................................................26

*Cooper v. Aaron,*
358 U.S. 1 (1958)...............................................................................26

*Coreas v. Bounds,*
451 F. Supp. 3d 407 (D. Md. 2020).....................................................25

*Daubert v. Merrell Dow,*
509 U.S. 579 (1993) .................................................................. 13

*Dep't of Commerce v. New York,*
139 S. Ct. 2551 (2019) ...................................... 17, 18, 19

*Doe v. BlueCross BlueShield of Tenn., Inc.,*
926 F.3d 235 (6th Cir. 2019) .............................................. 6

*Episcopal Church in S.C. v. Church Ins. Co. of Vermont,*
997 F.3d 149 (4th Cir. 2021) .............................................. 18

*Fry v. Napoleon Cmty. Sch.,*
137 S. Ct. 743 (2017) ............................................................. 5

*G.S. by and through Schwaigert v. Lee,*
No. 21-cv-02552-SHL-ATC, 2021 WL 4268285
(W.D. Tenn. Sept. 17, 2021) ........................................ 2, 15

*Hilton v. Braunskill,*
481 U.S. 770 (1987) ................................................................ 2

*Layton v. Elder,*
143 F.3d 469 (8th Cir. 1998) .............................................. 27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) ............................................................. 18

*Liddell v. Special Admin. Bd. of the Transitional Sch. Dist.,*
894 F.3d 959 (8th Cir. 2018) .............................................. 16

*Long v. Robinson,*
432 F.2d 977 (4th Cir. 1970) ........................................ 2, 21

*Lujan v. Defs. Wildlife,*
504 U.S. 555 (1992) ............................................................. 19

*Minnesota v. Carter,*
525 U.S. 83 (1998) ............................................................... 26

*Nat'l Fed'n of the Blind v. Lamone,*
813 F.3d 494 (4th Cir. 2016) ...................... 3, 6, 12, 13, 26

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999) ...................................................................... 5, 26

*Payan v. Los Angeles Community College District*,
   11 F.4th 729 (9th Cir. 2021) ........................................................ 9, 10

*Peregrino Guevara v. Witte*,
   No. 6:20-CV-01200, 2020 WL 6940814
   (W.D. La. Nov. 17, 2020) ................................................................ 25

*R.K. v. Lee*,
   No. 3:21-cv-00725, 2021 WL 4942871
   (M.D. Tenn.Oct. 22, 2021) .......................................................... 2, 15

*Roe v. Dep't of Def.*,
   947 F.3d 207 (4th Cir. 2020) ........................................... 1, 3, 21, 27

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2021) ........................................................................ 14

*S.B. by and through M.B. v. Lee*,
   No. 321CV00317-JRGDCP, 2021 WL 47556619
   (E.D. Tenn. Oct. 12, 2021) ............................................................... 2

*S.E.C. v. Dunlap*,
   253 F.3d 768 (4th Cir. 2001) ........................................................... 1

*Schuette v. BAMN*,
   572 U.S. 291 (2014) ........................................................................ 26

*Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*,
   673 F.3d 333 (4th Cir. 2012) ........................................................... 6

*South Carolina v. United States*,
   912 F.3d 720 (4th Cir. 2019) ......................................................... 14

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................ 15

*Staron v. McDonald's Corp.*,
   51 F.3d 353 (2d Cir. 1995) ............................................... 11, 17, 20

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................ 15

*Tennessee v. Lane,*
    541 U.S. 509 (2004) .................................................................. 4

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,*
    576 U.S. 519 (2015) ...................................................... 7, 8, 10

*United States v. Brown,*
    820 Fed. Appx. 214 (4th Cir. 2020) ..................................... 13

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021) .............................................................. 20

*Ex Parte Young,*
    209 U.S. 123 (1908) ................................................................ 21

## Statutes

29 U.S.C.
    § 794 ........................................................................................ 7
    § 794(c) ................................................................................... 7

42 U.S.C.
    § 12101(a)(5) ......................................................................... 10
    § 12101(b) ............................................................................. 10
    § 12132 .................................................................................... 7

## Other Authorities

Jeffrey Collins, *Official: Ruling means S. Carolina schools can require masks,* ASSOCIATED PRESS (Sept. 29, 2021) ..................... 18

# INTRODUCTION

The motion to stay should be denied. Defendants raise three separate points—that there is no Article III jurisdiction (Mot. 6-10), their arguments as to reasonable accommodation (Mot. 13-17), and their reliance on two medical studies and an op-ed (Mot. 18)—that were not raised below. As with their last motion (Dkt. 8-1), this violates Federal Rule of Appellate Procedure 8 and District of South Carolina Local Rule 62.02, which require a party seeking stays to "move first in the district court," citing "the reasons for" granting the relief. These rules work to ensure the district court has the opportunity to consider the challenge, and this Court has the benefit of the district court's ruling on important issues. This alone warrants denial of the motion. *See generally S.E.C. v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001).

In any event, Defendants have not come close to making the required "strong showing" on *any* of the factors necessary to warrant a stay. The motion is predicated on mischaracterizations of the district court's decision, Plaintiffs' legal theories, and key principles of law. "In light of the record viewed in its entirety," the district court's decision and "account of the evidence is plausible," *Roe v. Dep't of Def.*, 947 F.3d

207, 219 (4th Cir. 2020) (citations omitted), and consistent with federal courts around the country that have enjoined similar state laws. *Arc of Iowa v. Reynolds,* No. 4:21-cv-00264, 2021 WL 4166728 (S.D. Iowa Sept. 13, 2021) (TRO), *Arc of Iowa v. Reynolds,* No. 4:21-cv-00264, 2021 WL 4737902 (S.D. Iowa Oct. 8, 2021) (PI); *G.S. by and through Schwaigert v. Lee*, No. 21-cv-02552-SHL-ATC, 2021 WL 4268285 (W.D. Tenn. Sept. 17, 2021); *S.B. by and through M.B. v. Lee*, No. 321CV00317-JRGDCP, 2021 WL 47556619 (E.D. Tenn. Oct. 12, 2021); *R.K. v. Lee*, No. 3:21-cv-00725, 2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021); *see also* U.S. Statement of Interest, *E.T. v. Abbott*, No. 21-CV-00717 (W.D. Tex. Sept. 29, 2021).

## STANDARD OF REVIEW

On a stay motion, the Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Long v. Robinson*,

432 F.2d 977, 979 (4th Cir. 1970).  Defendants fail to satisfy any of these factors.

## ARGUMENT

## I.    Defendants Have Not Made a Strong Showing They Will Succeed On the Merits

The decision to grant an injunction is reviewed "for an abuse of discretion," which "is a deferential standard," and "may not [be] reverse[d] so long as the district court's account of the evidence is plausible in light of the record viewed in its entirety."  *Roe*, 947 F.3d at 219 (internal citations omitted).  The district court did not abuse its discretion here.

### A.    The district court did not abuse its discretion in concluding there is a private right of action to bring a reasonable modification claim

As the district court concluded, under this Court's precedent, "Title II and Section 504 provide for a private right of action . . . as well as allow Plaintiffs to assert non-intentional discrimination claims." App. 284 (citing *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016); *see also* App. 302.  That was not an abuse of discretion. Defendants' radical argument to the contrary—that challenged laws

must "deliberately discriminate[] against students with disabilities," Mot. 13—is demonstrably incorrect.

1. *Defendants' failure to discuss relevant case law.* Defendants do not cite a single decision of any court in the decades long history of the ADA and §504 adopting their view that there is no private cause of action for a reasonable accommodation. The cases cited at pages 13-17 of their motion largely do not concern the ADA or §504, and it is hard to overstate just how radical and unfounded Defendants' view is. While Defendants' heading states that they dispute whether there is a "private" right of action, their argument actually contests whether there is *any* non-intentional claim under the ADA or the Rehabilitation Act. Defendants' argument would mean that a public entity would have no obligation to make its public buildings accessible by adding ramps unless a plaintiff could prove the entity specifically built its stairs to discriminate against people with disabilities. That is as wrong as it sounds.

Supreme Court precedent confirms that Title II and §504 require public entities to provide reasonable modifications to qualified people with disabilities. In *Tennessee v. Lane*, the Supreme Court explained

that Title II imposes a "duty to accommodate," because Congress "[r]ecogniz[ed] that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." 541 U.S. at 531-32; *see also Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017) (describing absence of wheelchair ramps as discrimination); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) (finding discrimination under Title II of the ADA on a reasonable modification theory brought by private plaintiffs). In *Alexander v. Choate*, 469 U.S. 287, 296-97 (1985), the Court observed that "much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent." 469 U.S. at 299. And the Court has squarely held that Section 202 of the ADA, 42 U.S.C. §12132, and §504 of the Rehabilitation Act "are enforceable through private causes of action." *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002).

This Court's precedent likewise establishes that Title II and §504 "allow a plaintiff to pursue three distinct grounds for relief, including . . . failure to make reasonable accommodations." *A Helping Hand, LLC*

*v. Baltimore Cty., MD*, 515 F.3d 356, 362 (4th Cir. 2008); *see also Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 499, 503 nn.4-5 (4th Cir. 2016).[1]  In these cases, the Court granted relief to private plaintiffs bringing the claims.

*Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235 (6th Cir. 2019), Mot. 15, is not to the contrary.  That case does not concern reasonable modification claims; it concerns disparate impact claims under §504.  And the court distinguished reasonable-accommodation claims from disparate-impact claims.  *Id.* ("denial of [a] requested accommodation may amount to unlawful discrimination.").

2.  *Defendants' statutory interpretation is wrong.*  Even if this Court were writing on a blank slate, Title II and the Rehabilitation Act prohibit more than just intentional discrimination.  Defendants' six points are wrong.  Mot. 14-17.[2]

_____

[1] *See also Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 339 (4th Cir. 2012) ("public entity must 'make reasonable modifications . . . .'"); *Bacon v. City of Richmond, Virginia*, 475 F.3d 633, 639 (4th Cir. 2007) ("A statutory violation is not limited to a finding of discriminatory intent.").

[2] Moreover, most of this analysis was not presented to the district court and violates Rule 8, warranting denial of the motion.  The Attorney

*Statutory language.* The text of both Title II and §504 focuses on the impact on the disabled individual, not the motivation of the creator of the law or policy—which the text does not mention. *See* 42 U.S.C. §12132; 29 U.S.C. §794. "[A]ntidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the consequences of actions and not just to the mindset of actors, and where that interpretation is consistent with statutory purpose." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 533 (2015).

Further, when reauthorizing §504 after the Supreme Court's opinion in *Choate*, Congress added section 794(c), which explains that, in certain limited circumstances, "[s]mall providers are not required by subsection (a)," i.e., the anti-discrimination provision, "to make significant structural alterations to their existing facilities." 29 U.S.C. §794(c). This provision would be unnecessary if the anti-discrimination provision only reached intentional discrimination. *See Texas Dep't of*

---

General conceded below that the state "is required" to "make reasonable accommodations for the disabled." ECF 55 at 9. The Governor's statutory interpretation arguments only concerned disparate impact claims, ECF 58 at 11-14, not the reasonable accommodation claim the district court considered in entering the injunction.

*Hous. & Cmty. Affs*, 576 U.S. at 537-38 (interpreting Fair Housing Act to include disparate impact liability in part to avoid statutory surplusage).

Similarly, sub-section (d) expressly provides that "this section"—that is §504—can be violated in the employment context by policies that violate Title I of the ADA, which Defendants concede "permits disparate-impact claims." Mot. 15. There is only one §504; it cannot allow disparate-impact claims in employment and prohibit them in all other settings.

Defendants' "[p]lain language" analysis—that "by reason of" means "because of," and "because of" "requires that "disability motivate . . . the discriminatory act"—does not counter this showing. Mot. 14. Defendants cite *no source* for their sweeping assertion that the term "because of" requires proof of discriminatory motivation, much less "the sole motivation." *Id.* These terms require that disability *cause* the impermissible effects, but "cause" and "motive" are not synonymous. *See Inclusive Cmtys.*, 576 U.S. at 535 (noting that Title VII and ADEA, like the FHA, use "because of" phrasing and finding those statutes impose disparate impact liability).

*Comparison with Title VI.*  As the Ninth Circuit has explained, the Supreme Court's interpretation of Title VI in *Alexander v. Sandoval*, 532 U.S. 275 (2001) is not relevant to interpreting the ADA or the Rehabilitation Act because its holding turned on purposive and historical considerations unique to Title VI—not its text.  *Payan v. Los Angeles Community College District*, 11 F.4th 729, 735 (9th Cir. 2021). Similarly, the Supreme Court in *Choate* "counsel[ed] hesitation before reading Title VI and §504 *in pari materia* with respect to the effect/intent issue" because "the conclusion that, in response to factors peculiar to Title VI, *Bakke* locked in a certain construction of Title VI would not seem to have any obvious or direct applicability to §504." *Choate*, 469 U.S. at 294 n.11.

*Contrast with other statutes, Internal differences in the ADA & Remedies structure.*  Defendants' next three arguments (Mot. 15-16) contest only claims for disparate impact, which was not the basis for the district court's preliminary injunction, and need not be addressed by this Court.  Regardless, Defendants are wrong here too.

A civil rights statute need not use the phrase "otherwise adversely affect" or other magic words to prohibit discriminatory effects.  The

term "otherwise" is used in the FHA, Title VII, and the ADEA "to introduce the results-oriented phrase . . . signaling a shift in emphasis from an actor's intent to the consequences of his actions." *Inclusive Communities*, 576 U.S. at 534-535. But the text of both Title II and §504 are focused *exclusively* on the consequences of an action, and language to signal a "shift in emphasis" is unnecessary.

Defendants' analysis of differences between Title I and Title II of the ADA ignores that the text of the ADA states that its purpose is to "invoke the sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. §12101(b), which it found to include "discriminatory effects" and "failure to make modifications," §12101(a)(5).

While "the *remedies* for violations of §202 of the ADA and §504 of the Rehabilitation Act are coextensive with the *remedies* available in a private cause of action brought under Title VI," *Barnes* (emphasis added), it does not follow that the limitation on Title VI's scope also "dominoes" to the ADA or Rehabilitation Act. *See Choate*, 469 U.S. at 294 n.11. Defendants' contrary argument, Mot. 16, rests exclusively on the opinion of the dissenting judge in *Payan*.

*Regulations.*  Defendants' argument that a "federal agency cannot create private rights of action by regulation for something Congress did not prohibit by statute," Mot. 16, is beside the point.  Plaintiffs claim that Defendants violated the statutes.  App. 50-54.

In short, Defendants have failed to show that they are likely to prevail on the merits of their argument that the district court abused its discretion in concluding that Title II and §504 reach claims for reasonable modifications.

### B.  The district court's order is not a federal mask mandate and is reasonable

Defendants argue that the district court's order "turns Title II and section 504 into a federal mask mandate."  Mot. 10.  As the district court concluded in denying a stay, this argument is "meritless" because "determination of whether a particular modification is reasonable involves a fact-specific, case-by-case inquiry . . . South Carolina schools, and only South Carolina schools . . . must undertake a fact specific and case-by-case inquiry to determine whether reasonable accommodations are being made.  A fact specific and case-by-case inquiry can lead to a conclusion masks are required on certain parts of a school's campus and during certain hours.  Or it may not." App. 306 (citing *Staron v.*

*McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995)).  And it can mean that universal masking is necessary, a modification the court held would be reasonable.  App. 260.  Thus, the district court's order is hardly the "sweeping federal imposition on all students, teachers, and staff" portrayed by Defendants.  Doc. 36-1 at 12.

To the extent Defendants mean to argue that the district court erred in finding that any masking could be a reasonable modification, they ignore that the burden to establish reasonableness "is 'not a heavy one'"; "it 'is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'"  *Nat'l Federation of the Blind v. Lamone*, 813 F.3d 494, 507-08 (4th Cir. 2016) (citation omitted).  As the district court found, Plaintiffs easily met this light burden.  The modification—to permit masking—is ordinary in the sense that many South Carolina school districts and many other jurisdictions enforced masking requirements during much of the 2020-21 year without issue.  App. 40, 43  A modification cannot be called unreasonable if it was already "voluntarily implemented by defendants . . . without any apparent incident." *Lamone*, 813 F.3d at 508.  And Defendants make no

argument, let alone meet their burden in showing, that the order requires a fundamental alteration or imposes an undue burden. *E.g., Lamone*, 813 F.3d at 508.

Finally, Defendants posit that courts must give great deference to the policy choices elected officials make when evidence "cuts both ways." Mot. 18. This is wrong twice over. The *only* evidence *actually* before the district court pointed one way: the CDC, the American Academy of Pediatrics, and numerous studies support masking in schools to limit the spread of COVID-19. App. 286, 292. Defendants failed to present any evidence, expert or otherwise, below suggesting masks were ineffective. And the two studies Defendants ask this Court to consider for the first time, Mot. 18, both find masking curbs transmission of COVID-19.[3] This illustrates why fact finding "is the primary responsibility and role of the district court rather than th[e] appellate Court." *United States v. Brown*, 820 Fed. Appx. 214, 220 (4th Cir. 2020). The district court obviously cannot abuse its discretion in

---

[3] Defendants also cite an op-ed, which is not the kind of evidence upon which an expert can rely. *Daubert v. Merrell Dow*, 509 U.S. 579, 591 (1993).

resolving a question "about the safety and health of the people," Mot. 18—based on evidence Defendants never presented below.

Defendants are also wrong in their suggestion that the state should automatically win when public policy debates involve factual disputes, as they invariably do. This is untenable and contrary to basic principles of judicial review. *See generally Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 74 (2021) (Kavanaugh, J., concurring) ("[J]udicial deference in an emergency or a crisis does not mean wholesale judicial abdication . . . .").

## C.  Plaintiffs have standing

As they acknowledge (Mot. 6), Defendants did not challenge standing below, ECF 55, 58, 86. This violates Rule 8 and warrants denial of the motion.

Moreover, Defendants' arguments are without merit. Plaintiffs have met all requirements to establish Article III standing: "injury in fact," "traceability," and "redressability." *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 392 (2019) (citation omitted). Numerous courts have held that plaintiffs have Article III standing to challenge mask laws like Proviso 1.108, and

the same is true here.  *E.g.*, *The Arc of Iowa*, 2021 WL 4737902, \*5

("Plaintiffs have clearly shown they have a concrete and particularized

injury in fact, that is fairly traceable to Defendants' enforcement

of section 280.31, and that their requested relief will likely redress their

alleged injuries"); *R.K. v. Lee*, 2021 WL 4942871, at \*9 ("[T]he

imminent threat of COVID-19 is 'real, immediate, and direct' in

Plaintiffs' schools to confer standing."); *G.S. by and through*

*Schwaigert*, 2021 WL 4268285, at \*6 (similar); *S.B. by and through his*

*parents*, 2021 WL 4755619 (similar).

### 1.    Plaintiffs have an "injury in fact"

To establish an injury-in-fact, a plaintiff must allege that they

"suffered an invasion of a legally protected interest that is concrete and

particularized and actual or imminent, not conjectural or hypothetical."

*Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The injury

requirement "helps to ensure that the plaintiff has a personal stake in

the outcome of the controversy."  *Susan B. Anthony List v. Driehaus*,

573 U.S. 149, 158 (2014).  There is no question that the Plaintiffs have a

personal stake in the outcome here.

It is settled law that parents who assert "an injury to their children's education interests and opportunities" satisfy Article III's injury-in-fact requirement. *E.g.*, *Liddell v. Special Administrative Bd. of the Transitional Sch. Dist.*, 894 F.3d 959, 965 (8th Cir. 2018). Put simply, "[p]arents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children." *Id.* at 965-66.

Defendants assert that Plaintiffs will not be "imminently harmed," since only one of the seven defendant school districts (Charleston) has thus far adopted universal masking. Mot. 8. This misses the mark. Plaintiffs did not seek universal masking and the district court did not order it. *See* App. 57 (complaint seeks relief preventing Appellants from enforcing Proviso 1.108); App. 296 (enjoining Proviso 1.108). Enjoining Proviso 1.108 does not mandate universal masks, but instead, frees school districts to exercise their discretion to comply with their obligations under the ADA and §504 without fear of being sued by Defendants, or of having state funding withheld. Universal masking is not the only way for districts to comply with their obligations; rather, school districts can make a full range of

reasonable accommodations (narrowly tailored relief may be sufficient to accommodate a specific child's needs) after conducting a "fact-specific, case-by-case inquiry." *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995).

Defendants' focus on six defendant school districts also ignores that Plaintiffs Able South Carolina and Disability Rights South Carolina bring this action on behalf of all children with disabilities in South Carolina. In a multi-plaintiff action, it is sufficient for just one plaintiff to have standing. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019). And these Plaintiffs have injury-in-fact because some of these children are protected by the school districts in the state that have adopted masking requirements, among them, Chester, Hampton, Marlboro, Sumter, as well as certain school districts in Richland and Florence Counties.

That some of the Defendant districts have yet to impose mask mandates while the district court's preliminary injunction is on appeal is not surprising considering that these entities are Defendants in this litigation, school districts have been sued by the Attorney General in the past, and schools face ongoing threats for imposing mask mandates

in violation of Proviso 1.108. This includes a threat from Proviso 1.108's sponsor Rep. Stewart Jones that any school districts that enacted mandates would face "big time," "massive budget cuts."[4] And it includes an ongoing threat, pursuant to a legal opinion issued by the Attorney General, that "anyone with legal standing may sue to enforce" Proviso 1.108. S.C. Att'y Gen. Op. (Sep. 22, 2021). Where, as here, a plaintiff's injury can be traced to "the predictable effect of Government action on the decisions of third parties," standing exists." *Dep't of Commerce*, 139 S. Ct. at 2566.

## 2. Plaintiffs' injury is traceable to Proviso 1.108

To satisfy the traceability requirement, plaintiffs must show that their injuries are "fairly traceable to the challenged conduct of the defendant." *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 155 (4th Cir. 2021) (citation omitted). "Proximate causation is not a requirement of Article III standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). And traceability is satisfied where a plaintiff relies "on the predictable

---

[4] *See* Jeffrey Collins, *Official: Ruling means S. Carolina schools can require masks*, ASSOCIATED PRESS (Sept. 29, 2021).

effect of Government action on the decisions of third parties." *Dep't of Commerce*, 139 S. Ct. at 2566.

Here, Plaintiffs' injuries are fairly traceable. Many South Carolina school districts had imposed and enforced masking requirements prior to the enactment of Proviso 1.108. ECF 76 at 6 n.8. Others have publicly blamed Proviso 1.108 for their inability to enforce masking for the 2021-22 school year. ECF 76 at 6 n.9. And some have enacted or maintained their masking policies. The predictable effect of Proviso 1.108, as well as the actual and threatened actions to enforce it, is the refusal of school districts to impose universal or even limited masking requirements.

### 3. Plaintiffs injuries are likely to be redressed

To satisfy the redressability requirement, a plaintiff need only show that it will "be likely, as opposed to merely speculative" that a favorable decision would redress the harm. *Lujan v. Defs. Wildlife,* 504 U.S. 555, 561 (1992).

Defendants argue that, even if Proviso 1.108 is enjoined, school districts will still need to make a separate decision to impose mask mandates and that, as a result, Plaintiffs' injuries will not be redressed

by enjoining the enforcement of Proviso 1.108. Mot. 9-10.  This

argument ignores that a remedy need not completely redress an injury

in order to meet the redressability requirement; rather a "partial

remedy satisfies the redressability requirement." *Uzuegbunam v.*

*Preczewski*, 141 S. Ct. 792, 794 (2021).  Here, some school districts have

adopted masking requirements, and under the injunction, all schools

are able to engage in the "fact-specific, case-by-case inquiry" required by

federal law free from the Defendants' threats.  *Staron*, 51 F.3d 3 at 356.

## II. Defendants Have Not Shown They Will Be Irreparably Injured Absent a Stay

Defendants argue that "the Governor, Attorney General, as well

as the State, will be irreparably harmed absent a stay."  Mot. 19.  The

district court correctly held that their arguments "defy credulity."  App.

303.  The Attorney General did not contend below that he would be

irreparably harmed by entry of an injunction, *see* ECF 55; App. 290

(noting waiver); accordingly, his contention that he will be harmed is

waived.

Defendants' sole argument for irreparable injury is that a state

suffers an irreparable injury whenever it is enjoined from implementing

statutes that reflect a "policy choice."  Mot. 19-20.  But that is contrary

to a century of jurisprudence holding that federal courts can prospectively enjoin state officials from enforcing state laws to prevent violations of federal law. *E.g.*, *Ex Parte Young*, 209 U.S. 123 (1908). Defendants' contention ignores basic principles of federalism.

Defendants advanced no other form of irreparable harm here or below. Mot. 18-19. In particular, none of the Defendants submitted evidence that enjoining Proviso 1.108 would create any administrative burden or associated cost, or identified any benefit from continued enforcement of Proviso 1.108. *See* Mot. & ECF 54, 55, 57, 58. Even if Defendants had made this argument below, such assertions fall well short of substantiating the type of harm that this Court has held a governmental entity must demonstrate to establish entitlement to a stay from injunctive relief. *See, e.g., Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970); *Roe*, 947 F.3d at 231.

## III.   Issuance of a Stay Will Substantially Injure Plaintiffs

Defendants also argue that "Appellees will not be substantially harmed by a stay." Mot. 20-21. Most of these points were not raised below—indeed, the Attorney General did not dispute that Plaintiffs would be irreparably harmed below, *see* ECF 55; *see also* App. 288

(noting waiver). In any event, these arguments fail to satisfy the standard for a stay.

In the proceedings below, Plaintiffs asserted three discrete bases for irreparable harm: (1) violations of civil rights protected under anti-discrimination laws, ECF 16-1 at 20; (2) loss of educational opportunities because parents of children with disabilities do not feel safe sending their kids to school, ECF 16-1 at 21-22; App. 267-69; and (3) the risk presented from heightened exposure to COVID-19, a life-threatening virus that poses significant risks to people with certain disabilities, ECF 16-1 at 20-21; App. 264-67. Plaintiffs submitted supporting evidence, including expert testimony from Robert Saul, President of the South Carolina Chapter of the American Academy of Pediatrics. App. 64; App. 288-89.

In this Court, as below, Defendants do not address or otherwise challenge that Plaintiffs have established irreparable harm. *See* Dkt. 36-1. They have accordingly waived the issue.

With regard to exposure to COVID-19, citing Dr. Saul's analysis, the district court found that the expert medical evidence submitted by Plaintiffs established the likelihood of irreparable harm:

- "pediatric COVID-19 cases comprise an increasing share of overall COVID-019 cases both in the United State and South Carolina,"

- "South Carolina has the fourth highest cumulative case rate per 100,000 children in the United States, with over 9,500 recorded pediatric cases per 100,000," and

- The Governor had conceded that eighteen South Carolina children have died from COVID-19.

App. 288-89. In addition to these findings, Plaintiffs submitted

uncontested evidence that:

- Plaintiff children have disabilities that make them particularly vulnerable to serious health complications if they contract COVID-19, ECF 16-1 at 6-10, App. 266-67;

- over 40,000 South Carolina children had contracted COVID-19 since suit was filed in late August, ECF 76 at 1;

- in September, South Carolina was experiencing its highest rate ever for new infections and hospitalizations, App. 244;

- in September, South Carolina was reporting the highest rate of new COVID-19 cases in the County, App. 234-35;

- in September, the South Carolina Children's Hospital Collaborative reported 34 child hospitalizations, including 17 children in intensive care, and 8 on life support, App. 236; and

- South Carolina's rates of childhood COVID-19 incidence remained among the highest reported in the United States. App. 245.

Against this backdrop, Defendants' argument that the district

court failed to properly apply *Winter* is wrong. App. 288-90 (applying

*Winter* and citing other decisions concluding that irreparable harm is demonstrated by the threat of COVID-19 to students with disabilities).

Defendants cite no support for their extreme position that Plaintiffs have to prove that it is a "high probability" that a specific Plaintiff will contract COVID-19 in the absence of the injunction, Mot. 21, or that Plaintiffs must suffer a severe outcome. Mot. 20. In any event, Plaintiffs introduced extensive, unrebutted evidence about the extreme, high risks that COVID-19 presents to disabled children in a non-masked environment. *See* App. 64-95, 117-25, 147-97, 206-12. Defendants' assertions that the risk of contracting COVID-19 is "trending down" and children "have been remarkably resilient," Dkt. 36-1 at 21 & n.4, ignores (i) Governor McMaster's acknowledgment below that 578 South Carolina children have been hospitalized and 18 children (6 under the age of 10) have died of COVID-19, ECF 58 at 32, and (ii) the number of South Carolina children (40,000) that contracted COVID-19 between the suit's filing in late August and the entry of the injunction, ECF 76 at 1.

Defendants' analysis also ignores consistent findings from district courts, including within this Circuit, that increased risk of exposure to

COVID-19 poses a tremendous risk of irreparable harm. *See, e.g.,*
*Coreas v. Bounds*, 451 F. Supp. 3d 407, 428-29 (D. Md. 2020) (finding
COVID-19 exposure risks irreparable harm); *Banks v. Booth*, 459
F.Supp.3d 143, 159 (D.D.C. 2020) (same); *Peregrino Guevara v. Witte*,
No. 6:20-CV-01200, 2020 WL 6940814, at *8 (W.D. La. Nov. 17, 2020)
("It is difficult to dispute that an elevated risk of contracting COVID-19
poses a threat of irreparable harm").

## IV.  The Public Interest Supports Denial of the Stay

As the district court recognized "the public interest does not lie
with enforcement of a state law that violates the laws which Congress
has passed to prevent discrimination based on disability.  Moreover,
there is little harm to enjoining Proviso 1.108 and permitting the
public-school districts to satisfy their burden to make reasonable
modifications under Title II and Section 504."  App. 290.

Again, Defendants raise points not raised below.  As the district
court noted, "AG Wilson fails to address" the public interest.  App. 290.
The Governor shifts arguments he made below, *cf.* ECF 58 at 35, and
emphasizes that "injecting the judiciary into the debate on mask
mandates undermines public confidence in the courts" and "presents

significant federalism and separation-of-powers concerns." Mot. 21-22. But such considerations must yield because the "rights of children not to be discriminated against in school admission . . . can neither be nullified openly and directly by state legislators or state executives or judicial officers, nor nullified indirectly by them through evasive schemes. . . ." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958). While the Governor invokes *Schuette v. BAMN*, 572 U.S. 291, 313 (2014), and Justice Scalia's concurrence in *Minnesota v. Carter*, 525 U.S. 83, 98 (1998) to urge that political decisions should be insulated from court review, "the people's will is not an independent compelling interest that warrants" permitting discrimination. *Bostic v. Schaefer*, 760 F.3d 352, 379 (4th Cir. 2014) (discussing *Schuette*).

There is a strong public interest in promoting the nation's anti-discrimination laws. *See, e.g., Olmstead v. L.C.*, 527 U.S. 581, 589 (1999) (the ADA "is intended to provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities") (citing § 12101(b)(1)); *Lamone*, F.3d 813 at 505-06 (noting "Congress concluded there was a compelling need . . . to both eliminate discrimination and to integrate disabled individuals into the

social mainstream of American life") (citation omitted); *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) (the "public interest strongly favors" enforcement of Title II of the ADA).

The district court's conclusions regarding the public interest are "plausible in light of the record viewed in its entirety," *Roe,* 947 F.3d at 219, and do not warrant a stay.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay should be denied.

Dated: November 4, 2021

Respectfully submitted,
*s/ John A. Freedman*

David Allen Chaney Jr.
 AMERICAN CIVIL LIBERTIES
  UNION OF SOUTH CAROLINA
P.O. Box 20998
Charleston, SC 29413

John A. Freedman
 Elisabeth S. Theodore
 Anthony J. Franze
 Tara Williamson
 ARNOLD & PORTER KAYE
  SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
john.freedman@arnoldporter.com

Adam Protheroe
SOUTH CAROLINA
  APPLESEED LEGAL
  JUSTICE CENTER
P.O. Box 7187
Columbia, SC 29202

B. Randall Dong
Anna Maria Conner
Amanda C. Hess
DISABILITY RIGHTS SOUTH
  CAROLINA
3710 Landmark Dr., Suite 208
Columbia, SC 29204

Louise Melling
Jennesa Calvo Friedman
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad St.
New York, NY 10004

Susan Mizner
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111

Rita Bolt Barker
WYCHE, P.A.
200 East Camperdown Way
Greenville, SC 29601

*Counsel for Appellees Disability Rights South Carolina; Able South Carolina; Amanda McDougald Scott, individually and on behalf of P.S., a minor; Michelle Finney, individually and on behalf of M.F., a minor; Lyudmyla Tsykalova, individually and on behalf of M.A., a minor; Emily Poetz, individually and on behalf of L.P., a minor; Samantha Boevers, individually and on behalf of P.B., a minor; Timicia Grant, individually and on behalf of E.G., a minor; Christine Copeland, individually and on behalf of L.C., a minor; Heather Price, individually and on behalf of H.P., a minor; Cathy Littleton, individually and on behalf of Q.L., a minor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing response in opposition to emergency motion to stay injunction pending appeal and for administrative stay was filed electronically on November 4, 2021 and will, therefore, be served electronically upon all counsel.

s/ *John A. Freedman*
John A. Freedman

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d)(2) and 32(g), the undersigned counsel for appellee certifies the following:

1.    This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,128 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared using Microsoft Office Word 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

*s/ John A. Freedman*

John A. Freedman